# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-0010 JGB (MRWx)** | Date | May 9, 2014 |
|---|---|---|---|
| Title | ***Stacy Thompson v. Target Corp.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**  **Order (1) GRANTING Plaintiff's Motion to Remand (Doc. No. 241) and (2) REMANDING the Action to the California Superior Court, County of Los Angeles (IN CHAMBERS)**

Before the Court is Plaintiff Stacy Thompson's Motion to Remand (Doc. No. 241). The Court finds this matter suitable for resolution without a hearing pursuant to Local Rule 7-15. After considering the papers timely filed in support of and in opposition to the motion, the Court GRANTS the motion and REMANDS the action.

## I. BACKGROUND

On December 22, 2011, Plaintiff Stacy Thompson ("Plaintiff") filed her Complaint in state court against Defendant Target Corporation ("Defendant"). ("Compl. I," Not. of Removal I, Doc. No. 1, Exh. A.) The Complaint brought an action on behalf of all individuals, other than pharmacists, employed by Defendant on an hourly basis in California retail stores ("Hourly Employees"). (Compl. I ¶¶ 1, 56.) It stated two causes of action under California Labor Code § 226.7 and California Business and Professions Code § 17200 for failure to provide meal and rest breaks and unfair business practices. (Compl. I.) Defendant removed the action on January 3, 2012 on the basis of this Court's jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. (Not. of Removal.)

On March 26, 2012, the Court (Nguyen, J.) consolidated this action [hereinafter "Thompson I"] with Stacy Thompson v. Target Corporation, 2:12-cv-0032 JHN (MRWx) (C.D. Cal. Jan 3, 2012) [hereinafter "Thompson II"]. (Doc. No. 32.) The Complaint in Thompson II proceeded on behalf of the same class of Hourly Employees from Thompson I, alleged many of the same meal and rest period violations, but sought civil penalties under the Private Attorney General Act ("PAGA"). ("Compl. II," Thompson II, Not. of Removal II, Doc. No. 1, Exh. B.) Thompson II stated six causes of action: (1) PAGA claim for failure to provide meal breaks in violation of Cal. Labor Code §§ 512, 1198; (2) PAGA claim for failure to provide rest breaks in violation of Cal. Wage Order and Labor Code § 1198; (3) PAGA claim for failure to pay wages required by Cal. Labor Code § 204; (4) PAGA claim for failure to pay wages upon termination under Cal. Labor Code §§ 201, 202; (5) PAGA claim for failure to provide an accurate itemized statement in violation of Cal. Labor Code § 226; and (6) PAGA claim for failure to provide suitable seats in violation of Cal. Wage Order and Labor Code §1198. (Compl. II.) Defendant removed Thompson II on the basis of diversity and CAFA jurisdiction. (Not. of Removal, Thompson II.)

On April 23, 2013, Plaintiff filed her First Amended Consolidated Class Action Complaint consolidating the claims from Thompson I and Thompson II. ("FAC," Doc. No. 34.) In the FAC, Plaintiff states her first, third, fourth and fifth causes of action as a Private Attorney General to recover civil penalties owed to California as a result of Defendant's alleged labor code violations. (FAC ¶ 1.) Plaintiff brought the second and sixth causes of action as class actions for failure to pay wages under Cal. Labor Code § 226.7 and unfair business practices. (Id. ¶ 2.)

Plaintiff first moved to remand this action on April 23, 2012. (Doc. No. 35.) The Court (Fitzgerald, J.) denied the motion. ("Remand Order," Doc. No. 60.) On August 2, 2012, the Court (Fitzgerald, J.) granted in part Defendant's motion to dismiss and strike the FAC. ("MTD Order," Doc. No. 91.) Specifically, the Court held that the fourth claim for failure to pay wages upon termination could not be brought under PAGA and had to be alleged as an individual or class action claim. (MTD Order at 5-6.) On September 4, 2012, Plaintiff filed the operative Second Amended Consolidated Class Action Complaint. ("SAC," Doc. No. 96.) Pursuant to the MTD Order, the SAC states its first, third, and fifth causes of action under PAGA, and its second, fourth, and sixth claims as class actions for violations of Cal. Labor Code §§ 226.7, 201, 202 and unfair business practices. (SAC.) Defendant filed an amended answer on February 19, 2013. (Doc. No. 145.)

On January 30, 2013, Magistrate Judge Wilner ruled that Plaintiff was entitled to contact information for a sample of the putative class and ordered that notice be sent to 10 percent of the putative class allowing them to opt out of disclosure of their contact information to Plaintiff's counsel. (Doc. No. 138.) Plaintiff then filed an ex parte application for extension of time to file her motion for class certification due to the time required to comply with Judge Wilner's order. (Doc. No. 146.) The Court granted the application, held a status and scheduling conference, and set a February 3, 2014 deadline to file a motion for class certification. (Doc. Nos. 152, 161.) On January 8, 2014, Plaintiff filed a second ex parte application for extension of time to file her motion for class certification. (Doc. No. 171.) The Court denied the ex parte application (Doc. No. 184), and Plaintiff filed a motion for class certification on February 3, 2014 (Doc. No. 183).

Plaintiff then filed another ex parte application seeking a 70-day extension of the deadline to file her reply in support of class certification. (Doc. No. 185.) The Court granted the application in part and extended the reply deadline by 28 days. (Doc. No. 238.) The parties have filed voluminous briefing in support of and opposition to class certification. They have also filed several intervening motions, including Defendant's motion to strike an expert declaration (Doc. No. 197), Plaintiff's motion to strike 775 declarations of hourly employees (Doc. No. 246), and Defendant's motion to strike portions of the reply and several declarations offered in support thereof (Doc. No. 249).

On March 17, 2014, Plaintiff moved to remand this action for a second time. ("Motion," Doc. No. 241.) Defendant opposed on March 24, 2014. ("Opp'n," Doc. No. 242.) Plaintiff replied on April 7, 2014. ("Reply," Doc. No. 250.)

## II. LEGAL STANDARD[1]

CAFA vests federal district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Under CAFA, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

"A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). The preponderance of the evidence standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds[, in the CAFA context, five million dollars]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, of expected damages. See Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010) (holding that declaration established amount in controversy for removal jurisdiction).

The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). There is a "strong presumption" against removal jurisdiction, Gaus v. Miles. Inc., 980 F.2d 564, 566 (9th Cir. 1992), and doubts as to removability are resolved in favor of remanding the case to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also Washington v. Chimei Innolux Corp., 659 F.3d 842, 847 (9th Cir. 2011) ("[T]he general principles of removal jurisdiction apply in CAFA cases[.]").

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

### III. DISCUSSION

#### A. First Remand Order

As detailed above, this is Plaintiff's second attempt to remand this action to state court.[2] The Court denied Plaintiff's first motion and found that the Court had subject matter jurisdiction over the action at the time of removal. (Remand Order at 1.)

The Court previously stated that "it is well-established that courts determine the removability of a complaint at the time of removal, not at the time of a motion to remand." (Id. at 2.) See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) ("[J]urisdiction must be analyzed on the basis of the pleading filed at the time of removal without reference to subsequent amendments.") (quoting Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, 159 F.3d 1209, 1213 (9th Cir. 1998)). Therefore, the Court must "analyze[] the Thompson I and Thompson II Complaints separately to determine whether underlying diversity jurisdiction existed at the time of removal." (Remand Order at 2.)

#### 1. Thompson II

In the Remand Order, the Court first addressed Thompson II. As pled, the Thompson II Complaint alleged six causes of action under PAGA. (Compl. II.) The Court held that the PAGA penalties sought by Plaintiff could be aggregated to meet the minimum amount in controversy required for diversity jurisdiction. (Remand Order at 3-6.) By looking solely at the fifth claim for relief in Thompson II, the Court found that Defendant established that more than $75,000 was in controversy. (Remand Order at 5 (quoting Compl. II ¶ 68).)

Subsequent to the Remand Order, the Ninth Circuit held in Urbino v. Orkin Services of California, Inc., 726 F.3d 1118 (9th Cir. 2013), that damages from PAGA claims cannot be aggregated with damages from individual claims to satisfy the amount in controversy for ordinary diversity subject matter jurisdiction. Id. at 1122. Thus, as Defendant concedes, Urbino overruled the Court's method of calculating the amount in controversy for diversity jurisdiction over Thompson II. (Opp'n at 2.) Based on Urbino, the Court did not have diversity jurisdiction over the six PAGA claims pled in Thompson II at the time of removal.

---

[2] Pursuant to 28 U.S.C. § 1447(c), a motion for remand due to a procedural defect must be made within thirty days after the filing of the notice of removal under Section 1446(a). The instant Motion contends a procedural defect existed in that the Court lacked subject matter jurisdiction over the pleadings at the time of removal as required by Section 1441(a). Plaintiff properly filed a motion contesting jurisdiction on this basis within 30 days as required by Section 1447(c). This Motion, although filed as a motion to remand, actually seeks reconsideration of the Remand Order and thus re-raises an objection properly raised within the 30-day time limit. Reconsideration of the Remand Order is proper because there has been an intervening change in controlling law. See Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178–79 (9th Cir. 1998); Local Rule 7-18.

In the Remand Order, the Court expressly refused to assess jurisdiction over Thompson II under CAFA because it found, albeit ultimately incorrectly, that traditional diversity jurisdiction was established. (Remand Order at 6.) However, recently in Baumann v. Chase Inv. Servs. Corp., __ F.3d __, 2014 WL 983587 (9th Cir. Mar. 13, 2014), the Ninth Circuit foreclosed the possibility that Plaintiff's PAGA claims could establish CAFA jurisdiction, holding that "PAGA actions are not sufficiently similar to Rule 23 class actions to trigger CAFA jurisdiction." Id. at *4. Even though the Court did not reach the question in its Remand Order, subsequent Ninth Circuit authority clarifies that at the time of removal the Court did not have subject matter jurisdiction over Thompson II based on the theory that PAGA claims can support CAFA jurisdiction.

### 2. Thompson I

In the Remand Order, the Court noted that Defendant removed Thompson I on the basis of CAFA jurisdiction. (Remand Order at 6.) However, the Court declined to make a finding on whether CAFA jurisdiction was proper. (Id.) Instead, the Court chose to exercise supplemental jurisdiction over the claims in Thompson I because both Thompson actions arise from a common nucleus of operative facts. (Id.)

The Court went on to discuss, albeit in dicta, whether Defendant satisfied its burden of proving that the amount in controversy in Thompson I met the threshold requirement of $5,000,000. (Id. at 6-9.) The Court stated "[i]t is highly debatable whether Target's calculations would pass muster." (Id. at 7.) As detailed above, the Complaint in Thompson I stated two causes of action for (1) failure to provide meal and rest periods, for which Plaintiff seeks to recover one hour of wages for each violation pursuant to Cal. Labor Code § 226.7(b) and (2) equitable restitution under the unfair competition law. (Compl. I.) Plaintiff brought these claims on behalf of a class of all Hourly Employees since December 2007. (Compl. I ¶¶ 1-3.) In its calculations of the amount in controversy in the Notice of Removal, first opposition to remand, and the present opposition to remand, Defendant estimated that it had 200,000 Hourly Employees which it paid at least the minimum wage of $7.50 per hour. (See Not. of Removal I ¶¶ 17-18; Opp'n at 9-10.) These figures are not in dispute. At issue is Defendant's "assumption that each employee was subject to at least two instances of both meal and rest period violations." (Remand Order at 6 (citing Not. of Removal I ¶ 19).) The Court found that these assumptions were not based on any allegations in the Complaint, nor did Defendant offer any evidence to demonstrate that its estimation of four violations per employee was reasonable. (Remand Order at 7-8.) The Court found Defendant failed to provide specific evidentiary support for its violations estimate and thus the "amount of damages is highly uncertain." (Id. at 6.)

Nonetheless, the Court denied the motion to remand Thompson I and exercised jurisdiction over the claims on the basis of supplemental jurisdiction. The Court reasoned that since it clearly had jurisdiction over Thompson II under the theory that PAGA penalties could be aggregated to support diversity jurisdiction, the Court could exercise supplemental jurisdiction over Thompson I. However, as noted above, the Court's basis for jurisdiction over Thompson II has been overruled. Therefore, the Court must now determine whether any other bases could

have supported the Court's exercise of subject matter jurisdiction over <u>Thompsons I</u> and <u>II</u> at the time of removal.

### B. Second Motion to Remand

Jurisdictional facts are assessed on the basis of the Complaints at the time of removal. 28 U.S.C. § 1441. The Court therefore must examine the allegations in the <u>Thompsons I</u> and <u>II</u> Complaints, the Notices of Removal, and any "summary judgment type evidence relevant to the amount in controversy at the time of removal." <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir. 2004). The Court may not consider any post-removal events, including amended pleadings or subsequent reductions of the amounts at issue. <u>See</u> <u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283, 292 (1938); <u>Sparta Surgical Corp.</u>, 159 F.3d at 1213. "The propriety of removal . . . depends on whether the case originally could have been filed in federal court." <u>Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 163 (1997).

#### 1. Thompson I

Defendant argues that despite the Court's prior repudiation of its calculations, it demonstrated that the amount in controversy in <u>Thompson I</u> was greater than $5,000,000. (Opp'n at 9-10.) To support its estimation that each employee suffered four meal and rest period violations, Defendant cites to several paragraphs of the <u>Thompson I</u> Complaint, but no actual evidence. (<u>Id.</u> at 4, 9-10 (citing Compl. I ¶¶ 27, 30, 45, 46).) However, none of these paragraphs provide support for the quantitative assumptions on which Defendant's calculations rely.

A removing defendant is required to set forth underlying facts to support key variables used in their calculations. <u>Andersen v. The Schwan Food Co.</u>, C 13-2362 PJH, 2013 WL 3989562, at *2 (N.D. Cal. Aug. 2, 2013) (citing <u>Singer v. State Farm Mut. Auto. Ins. Co.</u>, 116 F.3d 373, 377 (9th Cir. 1997)). Calculations can be based on information provided on the face of the complaint as well as "summary-judgment-type evidence" such as affidavits or declarations provided by the removing defendant. <u>Valdez</u>, 372 F.3d at 1117. However, a court will reject calculations that are based on speculation and conjecture as insufficient to meet the preponderance of the evidence standard. <u>See</u> <u>Moreno v. Ignite Rest. Grp.</u>, C 13-05091 SI, 2014 WL 1154063, at *3 (N.D. Cal. Mar. 20, 2014); <u>Fong v. Regis Corp.</u>, C 13-04497 RS, 2014 WL 26996, at *4 (N.D. Cal. Jan. 2, 2014); <u>see also</u> <u>Lowdermilk v. U.S. Bank Nat'l Ass'n</u>, 479 F.3d 994, 1002 (9th Cir. 2007), <u>overruled on other grounds</u>, <u>Rodriguez</u>, 728 F.3d at 977.

Defendant points to Paragraphs 27, 30, and 46 which state that there have been "some occasions" on which Defendant failed to provide required meal or rest breaks, resulting in Labor Code violations which "occurred on a regular basis." (Compl. I ¶¶ 27, 30, 46.)[3] From these

---

[3] Defendant also cites to Paragraph 45 of the Complaint to argue that Plaintiff alleges that "Target always failed to provide rest period." (Opp'n at 4 (citing Compl. I ¶ 45).) However, the word "always" does not appear in Paragraph 45. Moreover, to the extent the paragraph could be read to imply that Defendant violated the rest period requirement 100 percent of the time, this paragraph applies only to shifts where the "employee worked a shift of more than two but less (continued . . . )

allegations, Defendant concludes each Hourly Employee suffered exactly four violations during their employment. As the Court previously stated, the allegations in the Complaint do not warrant such a conclusion. (Remand Order at 8 (finding that allegations that break violations occurred on "some occasions" or on a "regular basis" were insufficient to substantiate calculations that each employee suffered four violations).) Moreover, without evidentiary support, the Court cannot rely on Defendant's arbitrarily selected number of meal and rest period violations.

Numerous courts have found that similar allegations are insufficient to support assigning a specific number of violations per employee without evidence supporting such calculations. See Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1127 (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture."). In Roth, the court refused to accept defendants' assumption that each class member worked three to five hours of uncompensated overtime per week where the complaint alleged that class members "regularly and/or consistently" worked overtime hours. Id. at 1124. The court stated that "this statement simply does not support defendants' assumption," "[n]or have defendants attempted to support the assumption with evidence concerning the average hours worked or recorded per week by class members." Id. Defendant here, like the defendants in Roth, argues its calculations are "extremely-conservative assumption[s]" and thus should be credited as a reasonable estimate of the amount in controversy. (Opp'n at 10.) Roth, 799 F. Supp. 2d at 1125. Conservative or not, these assumptions have no factual basis in the Complaint, and Defendant has proffered no evidence demonstrating it is more likely that class members missed meal and rest periods four times than that they missed them once, twice, or three times. See id. ("Defendants, moreover, have proffered no evidence demonstrating that it is more likely that class members missed meal and rest periods three times a week than that they missed them three times a month."). See also Ray v. Nordstrom Inc., 2:11-CV-07277-JHN, 2011 WL 6148668 (C.D. Cal. Dec. 9, 2011) (refusing to accept defendant's assumption that "hourly employees missed one meal period and one rest period each pay period during the purported class period" because "Defendant has failed to demonstrate that Plaintiff's complaint supports Defendant's assumptions, and Defendant has not supported these assumptions with evidence of its own"); Maddox v. Continental Cas. Co., No. CV 11–00967–RGK (PJWx), 2011 WL 641511, *1 (C.D. Cal. Feb.10, 2011) (remanding action due to defendant's failure to prove the amount in controversy by a preponderance of the evidence because it "calculate[d] the amount in controversy by making significant assumptions. As to the first claim, Defendant assume[d] at least two missed meal periods and/or rest breaks per week. . . . Equally valid assumptions could be made that result in damages that are less than $75,000. Without any evidence supporting Defendant's assumptions, the Court finds Defendant's calculations unpersuasive. In short,

---

( . . . continued)
than four hours." (Compl. I ¶ 45.) Defendant does not provide any evidence to show how many Hourly Employees work shifts of this length or how frequently they occur. The Court cannot assume, without supporting evidence, that all of the class members worked these shifts and that they all experienced four rest period violations during these shifts.

Defendants ask the Court to speculate as to the number of overtime hours worked and the number of missed meal periods and rest breaks taken"); Martinez v. Morgan Stanley & Co. Inc., No. 09–02937 L(JMA), 2010 WL 3123175, *6 (S.D. Cal. Aug.9, 2010) (granting plaintiff's motion to remand where "[p]laintiff alleged that she 'frequently missed meal and rest periods'" because "Defendants assume that assistants were not provided three rest or meal breaks per week. This assumption is unsupported by the allegations in the complaint or by evidence[.]").

Defendant's failure to provide any evidence supporting its selected quantity of violations per employee is particularly troubling since "Defendant 'is the only party with access to its employment records,' and its failure to support its calculations with evidence leaves the Court to speculate about the amount in controversy." Bonnel v. Best Buy Stores, L.P., 881 F. Supp. 2d 1164, 1172 (N.D. Cal. 2012) (quoting Lowdermilk, 479 F.3d at 1002). In fact, Plaintiff specifically limited her claims to shifts which "can be identified through a computer analysis of the single database maintained by Defendant" which tracks and "records the hours worked by each Hourly Employee and each time an Hourly Employee is provided a meal [or rest] break." (Compl. I ¶¶ 33-34, 49-50.) However, nowhere in its Notice of Removal or oppositions to remand does Defendant cite to the records in its database to support the quantity of violations it assumes. Defendant's failure to support its quantitative assumptions of the amount in controversy with any allegations in the Complaint or evidence from the records in its possession leads the Court to conclude that Defendant's calculations are speculative. "When actual data is presumably available, . . . [Defendant's] belief is not enough to carry [its] estimate. Fong, 2014 WL 26996, at *5.

Although the Remand Order did not definitively hold that Defendant failed to prove the amount in controversy in Thompson I by a preponderance of the evidence, the Court's findings in that order clearly lead to such a conclusion, and the Court has no trouble reaching that holding now. In support of its argument that it has shown the requisite amount in controversy, Defendant cites to the same cases the Court previously distinguished as unhelpful in its Remand Order. (See Opp'n at 10-11; Remand Order at 8.) For the reasons previously explained, the Court continues to find those cases distinguishable. Accordingly, the Court finds that Defendant has not met its burden of establishing the $5 million amount in controversy by a preponderance of the evidence.[4] Defendant has not established that the Court had federal jurisdiction over Thompson I at the time of removal.

### 2. Thompson II

Defendant removed Thompson II on the basis of diversity and CAFA jurisdiction. The Court's basis for finding diversity jurisdiction has been overruled. See Urbino, 726 F.3d at 1122.

---

[4] In her first motion to remand and again in the present Motion, Plaintiff argues the Court must consider data Defendant produced to Plaintiff in discovery which purportedly reveals that the value of the meal and rest break claims is less than $5 million. (Reply at 3-4; Doc. No. 35 at 23.) The Court does not consider this evidence, as it finds that Defendant failed to identify allegations or evidence sufficient to meet its burden of establishing the amount in controversy is greater than $5 million.

Therefore, the Court must examine whether the remaining basis for jurisdiction – CAFA – survives.

As pled, Thompson II stated all six causes of action as PAGA claims, wherein Plaintiff stands in as a Private Attorney General to recover civil penalties that are owed to the State of California as a result of Defendant's violations of the Labor Code. (Compl. II.) In Baumann, the Ninth Circuit held that PAGA actions cannot be used "to establish the original jurisdiction of a federal court under CAFA." Baumann, 2014 WL 983587, at *5. Thus, Defendant cannot directly rely on Plaintiff's PAGA claims to support CAFA jurisdiction.

Instead, Defendant argues that the fourth cause of action for failure to pay wages upon termination is a class action claim improperly pled under PAGA. (Opp'n at 11-12; Not. of Removal II ¶ 28.)[5] Defendant points to the fact that the Complaint seeks to recover statutory waiting-time penalties under Cal. Labor Code § 203(a), which are not recoverable under PAGA because PAGA only provides for the recovery of civil penalties. (Opp'n at 12; Not. of Removal II ¶ 28.) Since statutory penalties are only recoverable as a class action, Defendant contends that Plaintiff's fourth claim for relief should be considered a class claim, not a PAGA claim, which falls under CAFA. (Opp'n at 12.) Based on this premise, Defendant goes on to calculate the amount in controversy under the fourth cause of action, as if it were pled as a class action, and concludes that Defendant's liability for the waiting-time penalties far exceeds the jurisdictional minimum. (Opp'n at 12; Not. of Removal II ¶ 29.)

"[T]he propriety of removal is determined solely on the basis of the pleadings filed in state court." Williams v. Costco Wholesale Corp., 471 F.3d 975, 976 (9th Cir. 2006). The Thompson II Complaint filed in state court stated the fourth cause of action as PAGA claim, not a class claim. The Court must base its jurisdiction on the claims as pled in the Complaint, not on Defendant's post hoc re-writing of the claims.

As Defendant correctly notes, post-removal events, including the Court's dismissal of the fourth claim for relief (MTD Order at 5-6) and Plaintiff's subsequent amendment of the claim to state it as a class action (SAC ¶¶ 59-64), cannot be considered in the jurisdictional analysis. (Opp'n at 7; Remand Order at 2.) See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1091-92 (9th Cir. 2010) ("[P]ost-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing."). Even if the fourth PAGA claim was improper and eventually dismissed, the Court cannot retroactively substitute in an alternate claim to find that subject matter jurisdiction is proper. As Defendant acknowledges (Opp'n at 20), after dismissal, Plaintiff had the option to amend her claim to state it as a class action or dismiss it altogether. The Court cannot base its jurisdiction at the time of removal on the speculative assumption that Plaintiff would re-plead her PAGA claim as a class action.[6]

---

[5] The Court did not address this argument in the Remand Order.

[6] Since Plaintiff did not plead a class action claim, the Court need not address whether this fictional claim would satisfy the amount in controversy requirement under CAFA. However, contrary to Defendant's calculations, it appears more logical for the Court to ignore a (continued . . .)

The CAFA jurisdictional provisions bar the retroactive re-pleading Defendant proposes. As the Ninth Circuit has made clear, the Court's inquiry into its CAFA jurisdiction "begins with the statutory text, and ends there as well if the text is unambiguous." Visendi v. Bank of Am., N.A., 733 F.3d 863, 868 (9th Cir. 2013) (quoting In re HP Inkjet Printer Litig., 716 F.3d 1173, 1180 (9th Cir. 2013)). 28 U.S.C. § 1332(d)(2) states that the district court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action." 28 U.S.C. § 1332(d)(2). Section 1332(d)(1)(B) defines "class action" as "any civil action *filed under* rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). As relevant here, CAFA's text is unambiguous; an action must be "filed under" a statute authorizing a class action in order for the Court to exercise CAFA jurisdiction. The fourth cause of action in Thompson II was not filed under Rule 23 or under any similar state statute authorizing a class action. In Baumann, the Ninth Circuit explicitly held that a PAGA claim is not an action "'filed under' a state statute or rule of judicial procedure 'similar' to Rule 23 that authorizes a class action." Baumann, 2014 WL 983587, at *2 (quoting 28 U.S.C. § 1332(d)(1)(B)). Since the fourth cause of action was pled as a PAGA claim and does not satisfy the definition of a "class action" under 28 U.S.C. § 1332(d)(1)(B), the Court does not have jurisdiction pursuant to CAFA. The fact that Plaintiff could have or should have pled the claim as a class action does not alter the jurisdictional analysis of the Complaint at the time of removal.[7]

For the foregoing reasons, the Court did not have jurisdiction over the Complaint in Thompson II at the time of removal.

### 3. Supplemental Jurisdiction

In the Remand Order, the Court acknowledged that CAFA jurisdiction over Thompson I was unlikely, but exercised supplemental jurisdiction over the claims on the basis that it had jurisdiction over Thompson II. (Remand Order at 6-9.) For the reasons previously discussed,

---

( . . . continued)
defective claim when calculating the amount in controversy and assign it a $0 value, rather than stand in Plaintiff's shoes, re-plead the claim properly, and assign it a $30 million value, as Defendant suggests. (Motion at 12; Not. of Removal II ¶¶ 28-29.)

[7] Defendant does not argue that Plaintiff mistakenly labelled or misleadingly disguised her class action claim as a PAGA claim. The Complaint clearly states that she brings her PAGA claims as representative actions under Cal. Labor Code § 2699 (Compl. II ¶¶ 1, 12-14), and Plaintiff continued to pursue the PAGA claim through the remand and dismissal motions (Doc. No. 35 at 21-23; Doc. No. 79 at 24-25). Plaintiff indisputably intended to bring her claim as a representative action under PAGA, and the Court must treat it as such. Cf. Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 323 (1980) ("The issue is whether an action, however it is styled, brought by a Government agency to enforce the federal law with whose enforcement the agency is charged is subject to the requirements of Rule 23.").

the Court did not have jurisdiction over <u>Thompson I</u> or <u>II</u> at the time of removal.  Without proper federal jurisdiction over at least one of the claims, the Court cannot exercise supplemental jurisdiction over any remaining claims.

Based on the foregoing, Defendant has not met its burden of establishing, pursuant to Section 1441(a), that the case was fit for federal adjudication at the time it filed the removal petitions.

### C. Post-Removal Jurisdiction

Defendant contends, and Plaintiff does not dispute, the Court could properly exercise subject matter jurisdiction over the claims pled in the SAC.  (Opp'n at 17.)  After the Court dismissed the FAC's fourth cause of action "to the extent that it is alleged as a PAGA, rather than individual, action" (MTD Order at 6), Plaintiff chose to amend the claim and, in conformity with the Court's order, re-pled it as a class action in the SAC.  (SAC ¶¶ 59-64.)  Specifically, the SAC's fourth claim pleads a class action claim for waiting-time penalties on behalf of Hourly Employees who quit or were terminated since 2007.  (<u>Id.</u>)  According to Defendant's calculations, which Plaintiff does not contest, the value of this claim exceeds $5 million.  (Opp'n at 17-18.)

Defendant argues that "[w]hen, following removal, the plaintiff amends his or her complaint to state a claim that is cognizable in the federal forum, the subsequent existence of jurisdiction cures any defect that may have existed at the time of removal."  (Opp'n at 18.)  To support this purported rule, Defendant cites two out-of-circuit cases.  In <u>Bernstein v Lind-Walkdock & Co.</u>, 738 F.2d 179 (7th Cir. 1984), the Seventh Circuit found that the plaintiff's case was not initially removable to federal court, "[b]ut after Bernstein's motion to remand was denied, he threw in the towel, as it were, and filed an amended complaint in federal court that included an unmistakable federal cause of action . . . ."  <u>Id.</u> at 185.  Plaintiff could have appealed the court's decision on remand, the court reasoned, "[b]ut once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there."  <u>Id.</u>

Similarly, the Fourth Circuit in <u>Moffitt v. Residential Funding Co., LLC</u>, 604 F.3d 156 (4th Cir. 2010), found that the district court could base jurisdiction on amended complaint and overlook defects in removal jurisdiction.  In <u>Moffitt</u>, plaintiffs initially filed state claims in state court, but later sent defendants' counsel a letter indicating their intent to amend their individual claims into class actions.  <u>Id.</u> at 158.  On the basis of counsel's correspondence, defendants removed the un-amended pleadings to federal court.  <u>Id.</u>  After removal, plaintiffs filed their amended class action complaints, stating claims which satisfied the requirements for federal jurisdiction under CAFA.  <u>Id.</u>  Assuming that a jurisdictional defect existed at the time of removal, the court held that "plaintiffs independently conferred jurisdiction on the district court by filing their amended class action complaints prior to moving to remand."  <u>Id.</u> at 159.

Although the procedural history in Moffitt differs from the instant action in several critical ways,[8] the Moffitt court's reasoning is relevant here.[9]

If the Court remands the action to state court, Defendant intends, just like the Moffitt defendants, to re-remove this case to federal court based on the CAFA claim in the operative SAC. (Opp'n at 20-21.) Thus, the Court's remand will be a pointless exercise in forum swapping and will only serve to cause additional delay in a case that has been litigated for over two years. On this point, Moffitt reasons "it would be a waste of judicial resources to remand these cases on the basis of an antecedent violation of the removal statute now that jurisdiction has been established" and "[r]equiring pointless movement between state and federal court before a case is tried on the merits can [] impose significant costs on both courts and litigants." Moffitt, 604 F.3d at 160. Although the Court agrees that remanding this action frustrates the principle of judicial economy, the Court cannot rely on Moffitt or Bernstein to deny remand where Ninth Circuit cases hold to the contrary.[10]

---

[8] In Moffitt, plaintiffs expressed their intent to state federal claims prior to removal and cured the jurisdictional defect by amending before moving to remand. Here, Plaintiff moved to remand while the now-revealed jurisdictional defects existed in the operative pleadings and did not amend to include a federal claim until after the Court dismissed the state claim with leave to amend.

[9] In support of retaining jurisdiction based on Plaintiff's amended complaint, Defendant also cites a footnote in Pegram v. Herdrich, 530 U.S. 211 (2000). In Pegram, plaintiff filed state claims in state court, and defendants removed on the basis of ERISA preemption. Id. at 215. Later, the district court granted plaintiff leave to amend, and plaintiff alleged an ERISA violation. Id. at 216. In a footnote, the Court stated plaintiff "does not contest the propriety of removal before us and we take no position on whether or not the case was properly removed." Id. at 215 n.2. However, the Court assured itself of appellate jurisdiction over the appeal because the "amended complaint alleged ERISA violations, over which the federal courts have jurisdiction[.]" Id. The Pegram Court did not indicate whether plaintiff sought remand, nor did it directly address the propriety of the district court's jurisdiction. Accordingly, this case is inapposite to the outcome here.

[10] To reach its holding, Moffitt relies on several out-of-circuit cases which have no precedential value here and one U.S. Supreme Court case. Moffitt cites Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996), for the principle that the lack of jurisdiction at the time of removal is not "'fatal to federal-court adjudication' where jurisdictional defects are subsequently cured." Moffitt, 604 F.3d at 159 (quoting Caterpillar, 519 U.S. at 64). However, the Caterpillar Court's holding is limited to improperly removed cases where the "federal jurisdictional requirements are met at the time judgment is entered." Caterpillar, 519 U.S. at 64. Caterpillar did not address cases, such as the instant action, which have not yet proceeded to trial and judgment. Notably, one of the overarching considerations in the Caterpillar Court's decision not to vacate judgment was the interest in "finality," which is not present here as the case has not yet proceeded to any determination of the merits. Id. at 75. Accordingly, without further precedential guidance, the Court cannot extend the Caterpillar holding beyond its clearly defined limits.

The Ninth Circuit has "long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." Williams, 471 F.3d at 976. For example, in Abada v. Charles Schwab & Co., Inc., 300 F.3d 1112 (9th Cir. 2002), plaintiff filed suit in state court, and defendant removed to federal court arguing plaintiff's claims were preempted by the Securities Litigation Uniform Standards Act. Id. at 1115-16. The district court denied plaintiff's motion to remand, and then plaintiff filed a first amended complaint which added an additional federal claim. Id. at 1116. On appeal, defendant claimed that the amended complaint included a federal cause of action that conferred subject matter jurisdiction on the court. Id. at 1117. The Ninth Circuit rejected defendant's argument stating that:

> It was only after the complaint was removed that Abada amended it to include a federal cause of action. "In determining the existence of removal jurisdiction, based upon a federal question, the court must look to the complaint *as of the time the removal petition was filed.* Jurisdiction is based on the complaint as originally filed and not as amended." O'Halloran v. Univ. of Wash., 856 F.2d 1375, 1379 (9th Cir. 1988) (emphasis added). [footnote omitted] Thus, the fact that Abada amended his complaint to include a federal claim is of no significance with regard to removal jurisdiction.

Abada, 300 F.3d at 1117. Also relevant here is the Ninth Circuit's opinion in Deutsch v. Turner Corp., 324 F.3d 692 (9th Cir. 2003), which, like here, addressed the jurisdiction of several consolidated cases. Id. at 718. "Among the many cases that have been consolidated, there are some individual cases as to which federal jurisdiction may uncertain." Id. Regarding the state-law actions with uncertain jurisdiction, the court noted that "[a]lthough some plaintiffs amended or sought to amend their complaints, after removal, to include federal claims, such amendments do not bear on the evaluation of removal jurisdiction." Id. at 718 n.2 (citing Abada, 300 F.3d at 1117). According to Williams, Abada, and Deutsch, unless judgment has been entered, Defendant cannot cure statutory removal violations by relying on amended pleadings which subsequently remedy the jurisdictional defect. See Caterpillar, 519 U.S. at 64; Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); see also Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir. 1979) ("Although the sixth cause of action, filed in federal court after removal, did state a federal question which would have justified removal had it been alleged in the state court prior to removal, this does not confer removal jurisdiction on the federal court.").

Defendant has not cited, and the Court has been unable to locate, any Ninth Circuit authority permitting amended pleadings to cure an improper removal prior to entry judgment. Although the Court finds that the principles espoused in Bernstein and Moffitt prevent gamesmanship and promote efficiency, the Ninth Circuit has not indicated its intent to follow this line of authority, and the Court is bound by the precedential authority outlined above. Ultimately, removal "[j]urisdiction is based on the complaint as originally filed and not as amended," O'Halloran, 856 F.2d at 1379 (citation omitted), and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," Gaus, 980 F.2d at 566. Barring Ninth Circuit authority permitting amended pleadings to confer removal

jurisdiction, the Court finds that removal of this action was improper and the case must be remanded.

### D. Attorneys' Fees

Because the Court finds that remand is required, the Court denies Defendant's request for the attorneys' fees it incurred in opposing the Motion. (Opp'n at 21-23.)

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand and REMANDS this action to the California Superior Court, County of Los Angeles.

**IT IS SO ORDERED.**